## Case No. 15,129.

### UNITED STATES v. FORBES.

[Crabbe, 558.] [1]

District Court, E. D. Pennsylvania. March 10, 1845.

#### SEAMEN—REVOLT—PILOT—INTOXICATION.

1. Wherever, by the overt acts of the crew, the authority of the master in the free navigation or management of his ship, or in the free exercise of his rights and duties on board, is entirely overthrown. and there is intentionally caused, by such acts, an actual or constructive suspension of his command. it is a revolt.

[Cited in U. S. v. Huff, 13 Fed. 637.]

2. But a mere disobedience of orders by one or two of the seamen, without combining with the others. or offensive or insolent language, is not a revolt.

3. The pilot is an officer of the ship when on board in the exercise of his duties, but the captain is still master of the vessel, and the pilot's orders are considered as the captain's.

4. Intoxication is rather an aggravation. than an apology for a crime committed during that state; but if an habitual or fixed frenzy is thereby produced, it places the man in the same condition as if it were contracted, at first, involuntarily.

This was an indictment for revolt. It appeared that the ship Farewell sailed from Philadelphia on the 25th December, 1844. When below Chester, the pilot being still on board, the crew, most of whom were intoxicated, became very disorderly and wholly out of the master's control, and, when the officers

---

1 [Reported by William H. Crabbe, Esq.]

attempted to seize the liquor in their possession, a portion of them, among whom [Thomas] Forbes was very prominent, refused to do duty. The mate of the ship in attempting to arrest Forbes was stabbed and killed by him, and it was only when he had been shot and wounded by the captain that the prisoner could be secured and sent to Philadelphia. The evidence also showed that Forbes was intoxicated at the time, but not so much so as to be unconscious of what he was doing.

The case came on to be tried, before Judge RANDALL, and a jury, on the 10th March, 1845, and was argued by Mr. Watts, Dist. Atty., for the United States, and by W. G. Smith, for Forbes.

Mr. Watts, U. S. Dist. Atty.

Revolt consists in the subversion of authority of the person in command of a vessel, if for a moment only; and so it has been defined by the courts having authority to describe it. U. S. v. Kelly, 11 Wheat. [24 U. S.] 418; U. S. v. Hemmer [Case No. 15,345]; U. S. v. Haines [Id. 15,275]; Act March 3, 1835 (4 Stat. 2416). This crime may be committed on board a vessel not under sail, or in a place not on the high seas, if it be within the admiralty jurisdiction, wherein it differs from murder, which cannot be punished in any court of the United States, if committed within the jurisdiction of any particular state. If the evidence is to be believed, the prisoner is guilty of revolt within this description of it, and the fact of intoxication is no excuse or palliation.

W. G. Smith, for Forbes.

The evidence shows no attempt to commit the technical crime of revolt, which consists in a resistance of the authority of the master of a ship, with intent to subvert it. At the time of the disturbance, the pilot, being on board in discharge of his duties, was the master of the ship, and there is no evidence of resistance to his authority. Indeed, he himself says that all his orders were obeyed; the resistance was to the mate of the ship. As to the intent, it certainly could not have been to subvert the authority of the master. It is not to be supposed that such an intention could have existed when the ship was in the midst of the Delaware, and within a few miles of this city. None of the requisites of a revolt have, then, been made out, and if the prisoner's acts amount to any crime it is a mere affray. Thorne v. White [Case No. 13,989].

Mr. Watts, U. S. Dist. Atty., in reply.

The command of the mate is the command of the master, and a pilot is only a quasi master, the captain being still regarded as virtually in command. So far as concerns the intention with which the prisoner acted, a certain intent must be presumed from certain actions, and, whether that intent is absurd or not, it must be presumed that parties have weighed the probabilities of success before they act.

RANDALL, District Judge (charging jury). The crime of revolt is punished under the act of congress of 3d March, 1835, and by that act the courts are empowered to give a judicial definition of the crime. I shall give this definition, dispose of the legal points made, and leave the jury to determine whether the evidence for the prosecution does not meet the requirements of the law. A revolt is the overthrowing the legitimate authority of the commander, with intent to remove him from the command, or, against his will, to take possession of the vessel by assuming the command and navigation of her. U. S. v. Kelly, 11 Wheat. [24 U. S.] 418. It is an open rebellion or mutiny of the crew against the authority of the master, in the command, navigation, or control of the ship. U. S. v. Haines [Case No. 15,275]. But a mere disobedience of orders by one or two of the seamen, without combining with the others to produce a deliberate disobedience, although it is highly censurable, and may be punished by the master on board the ship, or by forfeiture of wages,—is not a revolt; nor does mere offensive or insolent language constitute this crime. Wherever, by the overt acts of the crew, the authority of the master in the free navigation or management of the ship, or in the free exercise of his rights and duties on board, is entirely overthrown, and there is intentionally caused by such acts an actual or constructive suspension of his command, it is a revolt. Direct or positive force upon, or constraint or imprisonment of the master, is not essential. A positive refusal to perform any duty on board until he has yielded to some illegal demand of the crew, when it has produced a suspension of his power of command, or when, by a general combination, the crew refuse obedience to the lawful orders of the master, is a revolt. U. S. v. Haines [supra]. There may be a revolt without the appointment of another to the command. If the crew should compel the master, against his will, to navigate the ship or manage her concerns according to their directions, and prevent him from the free exercise of his own judgment, that would be an usurpation of the command and a revolt. U. S. v. Haines [supra]. The pilot is an officer of the ship when on board to pilot the vessel to or from the sea, and the crew are bound to obey his orders as such; but when the captain is on board he is master of the vessel, and the orders of the pilot are, in law, considered as the master's. U. S. v. Lynch [Case No. 15,648]. The artificial, voluntarily contracted, and temporary madness produced by drunkenness is rather an aggravation of than an apology for a crime committed during that state. A drunkard is a voluntary demon, and his intoxication gives him no privilege. If, however, an habitual or fixed frenzy is produced by this practice, though such madness is con-

tracted by the vice and will of the party, it places the man in the same condition as if it were contracted, at first, involuntarily. The wisdom of the law in refusing to recognise drunkenness as an excuse for crime is plain; nothing is more easily counterfeited, no state so irregular in its operation. With these instructions on the law involved, the case is committed to the jury.

A verdict of guilty was rendered, and Forbes was sentenced to six years' imprisonment, a fine of five dollars and the costs, and to stand committed until the sentence was complied with.